**Alexander Meggitt**, OSB #174131
Oregon Justice Resource Center
P.O. Box 5248
Portland, OR 97208
ameggitt@ojrc.info
Tel: (503) 944-2270

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| STEPHEN GREGORY and CINDI BREWER,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF BEAVERTON, KEVIN MCDONALD, DAN FRYE, MATT CLINE, GREG SCHAPP, JUSTIN HAUGEN, and JOHN DOES 1-10<br><br>    Defendants. | Civil No. 2:20-cv-337<br><br>**COMPLAINT**<br><br>CIVIL RIGHTS 42 U.S.C. § 1983; STATE TORT CLAIMS; DEMAND FOR DAMAGES AND ATTORNEY FEES<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1.     The sanctity of the home holds a special place in American law. Plaintiffs Stephen Gregory and Cindi Brewer, a married couple who own a house in unincorporated Washington County, had that sanctity violated when several Beaverton Police school resource officers held them in their Beaverton home for over eight hours without justification. Plaintiffs seek redress for the violation of their rights under the Fourth Amendment for the unlawful search and seizure of their persons and property at the hands of the defendants.

## II. PARTIES

2. Plaintiff Stephen Gregory is a resident of Washington County, Oregon. He is married to co-plaintiff Cindi Brewer.

3. Plaintiff Cindi Brewer is a resident of Washington County, Oregon. She is married to co-plaintiff Stephen Gregory.

4. Defendant City of Beaverton is a municipal organization located in Oregon with the capacity to sue and be sued.

5. Defendant Kevin McDonald is a Beaverton police sergeant and a School Resource Officer. Defendant McDonald is sued in his individual capacity.

6. Defendant Dan Frye is a Beaverton police officer and a School Resource Officer. Defendant Frye is sued in his individual capacity.

7. Defendant Matt Cline is a Beaverton police officer and a School Resource Officer. Defendant Cline is sued in his individual capacity.

8. Defendant Greg Schapp is a Beaverton police officer and a School Resource Officer. Defendant Schapp is sued in his individual capacity.

9. Defendant Justin Haugen is a Beaverton police officer and a School Resource Officer. Defendant Haugen is sued in his individual capacity.

10. John Doe 1 is a supervisor within the Beaverton Police Department who ordered or otherwise ratified the conduct of Defendant officers on September 4, 2019. He is sued in his individual capacity.

11. John Does 2-10 are unknown employees of the Beaverton Police Department, who ordered, directed, undertook, or in some manner participated in the violation of Plaintiffs' rights as alleged in this complaint. They are sued in their individual capacities.

12. Defendants Frye, Cline, Schapp, Haugen, McDonald, and John Does 2-10 are hereinafter referred to as the "Officer Defendants" when referenced collectively.

### III. JURISDICTION AND VENUE

13. This is a complaint for declaratory relief, and for damages, and attorney fees based upon defendants' violation of plaintiff's constitutional, statutory, and common law rights. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), (4). This Court has jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

14. This Court has subject matter jurisdiction pursuant to the Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

15. Venue is proper within the District of Oregon because all the events giving rise to this claim occurred in this judicial district and because Defendants are subject to personal jurisdiction in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in the Washington County, Oregon.

### II. FACTUAL ALLEGATIONS

16. On September 4, 2019, at approximately 8:00 A.M., Defendants Frye, Cline and John Does 2 and 3 approached Plaintiffs' residence in unincorporated Washington County, which Plaintiffs own. Defendant Frye knocked on the door and asked to come inside.

17. Ms. Brewer was the only family member home. She only recently arrived home after working the night shift at her job. She let all four officers in her residence.

18. Once inside, the officers informed Ms. Brewer that they had arrested her 18-year-old son, Dylan, while he was on his way to the first day of his final year of high school. They told her that he was charged with Disorderly Conduct.

19. Defendants further informed Ms. Brewer of the basis for Dylan's arrest: He had posted images to Snapchat of himself holding what appeared to be a gun, with accompanying text stating approximately "first day of school" and "so many white kids."

20. Dylan had been arrested earlier that morning and was later booked into the Washington County Jail.

21. Ms. Brewer told the officers that there were no firearms in the house, not even a BB gun.

22. Ms. Brewer asked if she should call her husband. None of the officers decisively responded to her question.

23. Defendant Doe 2 asked Ms. Brewer if Dylan's door was open or closed, then whether he could go upstairs to see if the door was closed. Ms. Brewer initially refused this request.

24. After Ms. Brewer said she was uncomfortable letting them go upstairs, Defendants Cline and Doe 2 told her that, because her son was eighteen years old, the officers did not have the legal authority to enter the room without Dylan's permission.

25. Shortly thereafter, Defendant Doe 2 asked if Ms. Brewer would take him upstairs to see Dylan's door. Ms. Brewer did so, then the two returned to the first floor.

26. After Defendants were present in Plaintiffs' residence for approximate eighteen minutes, Defendant Cline asked Defendant Doe 2, "So, do you want to mention the warrant?"

27. Defendant Doe 2 told Ms. Brewer that Dylan had denied officers consent to search his room, and other officers were working on obtaining a search warrant for the room.

28. Ms. Brewer then asked the Defendants to leave her home and return when they had a warrant.

29. The Defendants refused to leave. Defendant Doe 2 told Mr. Brewer that the officers could not leave unless Ms. Brewer left with them.

30. The Officer Defendants remained in Plaintiffs' house for approximately the next eight hours, with individual officers occasionally rotating out or otherwise switching positions.

31. Ms. Brewer called her husband, co-plaintiff Mr. Gregory, who left his job to come home and speak with the officers. Plaintiffs then remained inside their house with the officers for the rest of the day. Plaintiffs did not want to leave their home. Plaintiffs remained in their front living room, with the Officer Defendants, throughout this time, and Defendants would not let Plaintiffs out of their sight.

32. Throughout the day, Plaintiffs asked the Officer Defendants to leave their home and return when Defendants obtained a search warrant. Each time, Defendants refused.

33. Several times during Defendants' occupation of their home, Plaintiffs asked the Officer Defendants to place tape over the door to Dylan's room or otherwise seal it off. Defendants refused.

34. Throughout this incident, Plaintiffs did not feel free to leave their home.

35. Ms. Brewer was anxious and distressed throughout the incident. At one point, around four hours into the Defendants' occupation of her home, Ms. Brewer went to the home's upstairs bathroom and vomited, because she was so anxious from the events of the day. One Defendant officer stood at the bottom of the stairs to monitor her while this happened.

36. Upon information and belief, one of the Officer Defendants left the residence and called a supervisor, John Doe 1. John Doe 1 told that Officer Defendant that officers had to stay in the home, no matter what the residents said.

37. Sometime between 4:00 and 5:00 P.M., Officer Defendants finally obtained a

search warrant for Dylan's room. Defendant Frye read the warrant out loud to Plaintiffs before he and other officers went upstairs to search Dylan's room.

38. The Officer Defendants did not find a gun or anything resembling a gun in Dylan's room.

39. After the officers could not locate any firearm, Defendant Frye told Plaintiffs that the officers wanted to look through the bathroom but did not "have paper for that," referring to the search warrant. He added, "if you want to look through there, that's up to you."

40. Defendant Cline then told Plaintiffs that, if they find a firearm in the garage at a later time, Plaintiffs will need to notify the police. Possibly referring to Dylan, Defendant Cline added, "He did say it was in the house."

41. The Officer Defendants then left the residence.

42. Dylan was released from custody later that night. He returned to Plaintiffs' residence, in which the Officer Defendants believed the alleged gun remained.

43. Upon information and belief, the alleged gun that Officer Defendants searched for was never recovered.

44. Defendants did not need the purported firearm for their case against Dylan. The crimes which Dylan was charged, Disorderly Conduct and Harassment, were completed by the sending of the images via Snapchat earlier in the day, before Dylan was arrested and before Officer Defendants came to Plaintiff's home.

45. Since this encounter, Plaintiffs' confidence in law enforcement has been shattered. Feeling that Defendants duped her into letting them into her home, Ms. Brewer no longer trusts police officers, and becomes nervous and fearful when she sees them or their vehicles in public. Mr. Gregory, too, has lost confidence and trust in law enforcement due to this

incident. The Officer Defendants' actions also embarrassed Plaintiffs in front of their community, and some neighbors no longer speak to them based on the stigma from this incident.

### CLAIMS FOR RELIEF

46. Plaintiffs bring claims under 42 U.S.C. § 1983, for violations made by the named Defendants, and John Does 1-10 of Plaintiffs' Fourth Amendment rights, claims under 28 U.S.C. § 2201 for declaratory relief, and state tort claims.

47. The Defendants are all persons within the meaning of 42 U.S.C. § 1983.

48. Plaintiffs seek an award of economic damages, non-economic damages, declaratory relief, and attorney fees and litigation expenses/costs against defendants.

### FIRST CLAIM FOR RELIEF
### FOURTH AMENDMENT
**(42 U.S.C. § 1983 Claim for Violation of Fourth Amendment Rights; Plaintiffs against Officer Defendants; Individual Capacity)**

49. Plaintiffs incorporate and reallege paragraphs 1–48 above.

50. Under the Fourth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment to the United States Constitution, Plaintiffs have a right to be secure in their effects and free from unreasonable searches and seizures.

51. As alleged above, in remaining in Plaintiffs' residence for approximately eight hours after Ms. Brewer explicitly revoked her consent for them to be within her residence, the Officer Defendants violated Plaintiffs' clearly established rights under the United States Constitution to be free from unreasonable search and seizure of themselves and their property, of which Defendants knew, or of which reasonable police officers should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

52. Based on the Defendant officers' conduct, Plaintiffs are entitled to an award of damages and declaratory relief.

53. The unreasonable seizure of Plaintiffs and search and seizure of Plaintiffs' home was the direct and proximate cause of the violation of Plaintiffs' rights, loss of liberty, mental and emotional suffering, worry, fear, anxiety, and nervousness. Plaintiffs have suffered economic and non-economic damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### FOURTH AMENDMENT
**(*Monell* claim for municipal liability under 42 U.S.C. § 1983; Plaintiffs against City of Beaverton and John Doe 1)**

54. Plaintiffs incorporate and reallege paragraphs 1–53 above.

55. As described in Claim One, Defendants violated Plaintiffs' constitutional right to be free from unreasonable search and seizure.

56. Defendant's conduct is illustrative of a policy or custom of Beaverton police officers violating the Fourth Amendment rights of individuals without justification and without a valid search warrant.

57. Defendants City of Beaverton and John Doe 1 failed to train and discipline their officers, including Defendants, in following constitutional norms, as described above.

58. The unreasonable seizure of Plaintiffs and search and seizure of Plaintiffs' home was the direct and proximate cause of the violation of Plaintiffs' rights, loss of liberty, mental and emotional suffering, worry, fear, anxiety, and nervousness. Plaintiffs have suffered economic and non-economic damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### OREGON CONSTITUTION
**(Declaratory Relief under 28 U.S.C. § 2201 and ORS 28.010; Plaintiffs against Officer Defendants)**

59. Plaintiff incorporates and re-alleges the facts set forth in Paragraphs 1–58 above.

60. The search and seizure of Plaintiffs and their home violated Plaintiffs' rights under Article I, section 9 of the Oregon Constitution.

61. Article I, section 9 of the Oregon Constitution created a duty that Officer Defendants violated, resulting in the violation of Plaintiffs' rights, their loss of liberty, the interference with their property and peace of mind, causing them mental and emotional distress.

62. Plaintiffs are entitled to declaratory relief, including a declaration stating that their rights were violated under Article I, section 9 of the Oregon Constitution, with respect to officers remaining in a person's home when the person does not consent and officers do not have a search warrant.

### FOURTH CLAIM FOR RELIEF
### STATE TORT
### (Trespass)

63. Plaintiffs incorporate and re-allege the facts in paragraphs 1–62 above.

64. The Officer Defendants remained on Plaintiffs' property after Plaintiffs repeatedly asked them to leave. Defendants were aware that Plaintiffs revoked any privilege that allowed Defendants to remain on their property. Defendants' actions amounted to trespass.

### CONCLUSION

WHEREFORE, Plaintiffs pray for relief as follows:

a. For judgment in favor of Plaintiffs against Defendants for their damages and for declaratory relief;

b. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 for their first two claims for relief; and reasonable attorneys' fees for their third claim for relief.

c. For such other and further relief as this Court deems just and equitable under the circumstances.

DATED:  March 2, 2020.

*/s/ Alex Meggitt*
Alex Meggitt, OSB #174131
Email: ameggitt@ojrc.info
P.O. Box 5248
Portland, OR 97208

Attorney for Plaintiffs
